UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MICHAEL EDWARDS
        Plaintiff,

v.

Case No. 1:14-cv-0832

HONORABLE PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY
        Defendant.
                             /

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Michael Edwards seeks review of the Commissioner's decision denying his claim for disability benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with

finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff is 42 years old. He completed the ninth grade and previously worked as a commercial cleaner, deboner, and general laborer. (Tr. 40, 52–53). In August 2002, Plaintiff applied for disability benefits (DIB) and supplemental security income (SSI). (Tr. 17). Plaintiff was determined to be disabled and received benefits through December 2005, after which time his disability was determined to have ended and benefits ceased. (Tr. 17). On September 22, 2009, Plaintiff filed DIB and SSI applications alleging a disability beginning February 5, 2009. (Tr. 107).

On March 25, 2011, ALJ Patrick Rhoa issued an opinion finding that Plaintiff was not disabled. (Tr. 104–22). The Appeals Council declined to review ALJ Rhoa's decision on May 25, 2012, making it the Commissioner's final decision.

On April 20, 2011, Plaintiff filed new applications for DIB and SSI alleging a disability beginning on May 5, 2009. (Tr. 213–226). Plaintiff complained of bipolar disorder, PTSD, depression, and borderline IQ. (Tr. 123). Those applications were denied by the Commissioner on September 6, 2011, and Plaintiff thereafter requested a hearing before an administrative law judge (ALJ). (Tr. 149–168). On February 7, 2013, Plaintiff appeared with his counsel before ALJ Douglas Johnson in which both Plaintiff and a vocational expert (VE) testified. (Tr. 33). On April 25, 2013, ALJ Johnson issued a written decision finding Plaintiff not to be disabled. (Tr. 14–28). Plaintiff appealed, but on June 4, 2014, the Appeals Council declined to review the ALJ's decision. (Tr. 4–9). Plaintiff thereafter commenced the instant action.

## ALJ'S DECISION

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

The social security regulations articulate a five-step sequential process for evaluating

3

disability. *See* 20 C.F.R. §§ 404.1520(a-f), 415.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined Plaintiff's claim failed at the fifth step of the evaluation. The ALJ first found that Plaintiff had not engaged in substantial gainful activity since March 25, 2011. (Tr. 20). Second, the ALJ determined that Plaintiff had the severe impairments of: (1) degenerative disc disease of the lumbar spine; (2) obesity; (3) major depressive disorder, recurrent, moderate; (4)

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

learning disorder; and (5) history of substance abuse. (Tr. 20). Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 21–23).

With respect to Plaintiff's residual functional capacity (RFC), the ALJ adopted ALJ Rhoa's RFC determination that Plaintiff was able to perform:

> sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant cannot climb ladders, ropes or scaffolds but can occasionally climb ramps and stairs. Moreover, the claimant must avoid all hazards; and must avoid concentrated exposure to irritants such as fumes, dust, and gases. The claimant further has moderate limitations in persistence and pace so he would be able to perform only simple, routine, and repetitive tasks. Finally, the claimant must have only limited contact with the general public; and occasional interaction with coworkers and supervisors.

(Tr. 23). Continuing with step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 27).

At the fifth step, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health & Human Servs.,* 587 F.2d 321, 323 (6th Cir. 1978). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case

5

here. The VE testified that there existed approximately 5,600 regional jobs[2] which an individual similar to Plaintiff could perform (Tr. 55). These jobs included work as an assembler, production inspector, and production sorter. (Tr. 55). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Thus, following the five steps, the ALJ determined Plaintiff was not under a disability from May 5, 2009 through April 25, 2013, the date of the decision. (Tr. 28).

## ANALYSIS

A.   **Listing 12.05(C)**

The Listing of Impairments, detailed at 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff asserts he is entitled to relief because ALJ Johnson erred in finding he was bound, under the doctrine of *res judicata*, to apply ALJ Rhoa's finding that Plaintiff did not meet Listing 12.05(C), the listing for Intellectual Disability.[3] Plaintiff argues the doctrine is inapplicable because of material, detrimental changes in Plaintiff's condition. Listing 12.05(C) contains the following relevant requirements:

> 12.05 Intellectual Disability: Intellectual Disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports the

---

[2] At the administrative hearing, the VE stated that for purposes of his testimony, "regional jobs" were jobs in the lower peninsula of the State of Michigan. (Tr. 55).

[3] Less than four months after the ALJ's decision in this matter, the Commissioner modified Listing 12.05 to replace the phrase "mental retardation" with "intellectual disability." 78 Fed. Reg. 46,499 (August 1, 2013) (codified at 20 C.F.R. pts. 404 and 416). Because Plaintiff's brief uses the new term, and the change in terminology did not reflect any substantive change, the Court uses the newer phrase. (*See* ECF No. 10, PageID.395); 78 Fed. Reg. at 46,500–01; *see also Hickel v. Comm'r of Soc. Sec.*, 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013).

onset of symptoms before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied:

* * *

(C). A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. The Sixth Circuit summarized the claimant's burden under Listing 12.05(C) as follows:

> In essence, then, a claimant must make three showings to satisfy Listing 12.05©: (1)[s]he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2)[s]he has a "valid verbal, performance, or full scale IQ of 60 through 70"; and (3) [s]he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."

*West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 697–98 (6th Cir. 2007) (quoting § 12.05).

In the prior decision, ALJ Rhoa found that Plaintiff did not meet the criteria of Listing 12.05(C), primarily based on the fact that Plaintiff did not have a valid verbal, performance, or full scale IQ of 60 through 70. With regards to paragraph C, ALJ Rhoa stated:

> Finally the 'paragraph C' criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The undersigned finds that while the claimant had a full-scale IQ score of 62 at the consultative psychological examination, this score is not valid and did not occur before the claimant was 22 years old (Exhibit 8F). In particular, the claimant has demonstrated an ability to not only take care of himself but he is also able to care for his father (Exhibit 2E). Moreover, the record shows that while the claimant currently lives with his family, he use[d] to live on his own and did his own household chores (Exhibit 2F). Furthermore, the consultative psychological examiner noted that when the claimant was asked to read a paragraph written at an eight grade reading level, he was able to do so adequately, which was unexpected given his allegedly low IQ score (Exhibit 8F).

(Tr. 112)

In his decision denying Plaintiff's claim, ALJ Johnson found that "[t]he current medical evidence . . . shows there has been no significant change in the claimant's condition" since ALJ Rhoa's March 25, 2011 decision. (Tr. 18). Specifically, ALJ Johnson noted "the claimant's limitation of functioning continues to be in the areas of social functioning and maintaining concentration, persistence or pace. Based on the claimant's statements, his complaints are not consistent with a decrease of daily functioning regarding his activities of daily living." (Tr. 25). Accordingly, ALJ Johnson found himself bound, based on the social security rulings, to apply the prior determination of ALJ Rhoa.[4]

The ALJ's conclusion that the new evidence presented by plaintiff–new GAF scores and treatment records from DDS consultants Kimberly Lem and Social Worker Stacey Fox–did not show that his conditions had worsened or significantly changed is supported by substantial evidence. The evidence prior to ALJ Rhoa's March 25, 2011, decision reveals that Plaintiff was experiencing emotional psychological impairments. ALJ Rhoa found Plaintiff had "moderate" difficulties in social functioning. (Tr. 110). Plaintiff tended to be overwhelmed and had difficulty in concentration. (Tr. 111). Plaintiff stated he preferred to be alone but an examiner noted Plaintiff was sociable and pleasant. (Tr. 111). Plaintiff spoke on the phone with his friends, attended church and barbeques, but had difficulties performing multiple tasks. (Tr. 111, 113).

---

[4]As the rulings demonstrate: "[w]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding." SSAR 98–3(6), 63 Fed.Reg. 29770–01 (June 1, 1998); SSAR 98–4(6), 63 Fed.Reg. 29771 (June 1, 1998); *see also Caudill v. Comm'r of Soc. Sec.*, 424 F. App'x 514, 514 (6th Cir. 2011).

8

The evidence subsequent to ALJ Rhoa's decision does not support Plaintiff's argument that his impairments worsened such that ALJ Johnson was precluded from adopting the previous step three determination. The evidence indicates that Plaintiff's mental condition, at worst, stabilized. On December 18, 2012, Dr. James Eicher noted improvement in Plaintiff's bi-polar syndrome. While relapses are common, Dr. Eicher stated, he expected Plaintiff to improve. (Tr. 328). William Brooks, a psychologist, gave Plaintiff a guarded prognosis. (Tr. 299). Plaintiff had difficulty understanding questions, had limited concentration and social skills, but was able to manage simple and repetitive tasks. (Tr. 299). Dr. Eicher also noted Plaintiff had a good, or normal, memory. (Tr. 321). Plaintiff reported "some progress" towards meeting his goal of feeling good about himself and working on his relationships. (Tr. 336). He had "OK" relationships with his family members (Tr. 295) and a "good" relationship with a girlfriend that lasted for more than a year. (Tr. 295). He had friendships, and the primary difficulty in visiting with them seemed to be financial rather than social. (Tr. 295). In sum, the conclusion by ALJ Johnson that there did not exist changed circumstances requiring the ALJ to depart from applying the doctrine of *res judicata* is supported by substantial evidence.

Plaintiff's claim regarding Listing 12.05 is thus rejected.

**B.     Medical Opinions**

Plaintiff claims the ALJ erred in his treatment of the opinions from Dr. James Eicher and his therapist, Stacey Fox. For reasons stated below, the Court concludes Plaintiff's claim fails.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give

controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (*citing Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

Finally, should an ALJ give less than controlling weight to a treating physician's opinion, the

ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

On December 18, 2012, Dr. James Eicher opined that working a part-time job "may be beneficial" for Plaintiff, but that working a full-time job would be "extremely difficult" due to his moods (Tr. 328). The ALJ rejected this opinion because it did not explain why part-time work would be beneficial and full-time work extremely difficult. (A.R. 26). It is undisputed that Dr. Eicher qualifies as a treating physician, thus the ALJ was required to articulate good reasons for giving the opinion less than controlling weight. The Court concludes the ALJ has done so. Dr. Eicher's opinion does not explain why Plaintiff would benefit from part-time work, but Plaintiff would find full-time work extremely difficult, and the treatment notes of Dr. Eicher do not give any insight into this conclusion. (Tr. 312–21). With nothing more than this bare assertion, the ALJ was unable to resolve this apparent inconsistency. Accordingly, the ALJ did not err in giving less than controlling weight to Dr. Eicher's opinion.

Plaintiff's argument that the ALJ erred by neglecting the factors in 20 C.F.R. 404.1527 in discounting the opinion of Dr. Eicher must also fail. As noted above, the ALJ is not required to explicitly address each of the factors, and in this case the ALJ did discuss the length of time Plaintiff

11

had been treated by Dr. Eicher and the frequency of visits. (Tr. 25). What ultimately matters, however, is that the ALJ's reasons for discounting a treating physician's opinion must simply be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (quoting Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The ALJ in this case has done so. As noted above, the ALJ discounted Dr. Eicher's opinion that Plaintiff would have extreme difficulty returning to full time work because the doctor did not explain why he also believed Plaintiff would benefit from part-time work. (Tr. 26). This reason is specific enough to permit meaningful review. Moreover, in explicitly discussing some of the factors, as mentioned above, the ALJ indicated that he at least considered the factors in the regulations. Accordingly, Plaintiff's claim regarding Dr. Eicher fails.

On December 10, 2012, Stacey Fox, a licensed social worker, opined that Plaintiff was limited to a greater extent than that found by the ALJ. She noted that she had been treating Plaintiff on a biweekly basis for roughly four months. (Tr. 322). She further noted that Plaintiff struggled to stay focused during a forty-five minute session and that Plaintiff had " limited insight and implementation of given tasks." (Tr. 322). In a "check box" portion of the assessment, the therapist noted that Plaintiff would be unable to meet competitive standards in his ability to remember work-like procedures, as well as understand, remember, and carry out very short and simple instructions. (Tr. 324).

> The ALJ gave the opinion "very little weight:"
>
> The opinion is not consistent with other evidence in file. Dr. Eicher, already indicated the claimant made improvements and was expected to have additional improvement (Ex B4F, B7F). The claimant reported that his relationship with his family is good. He has friends that he visits and they visit him. He has a girlfriend

> whom he lives with. The only reason he does not get out to shoot pool or go bowling is due to limited finances (Ex B3E, B4E). Furthermore, on September 21, 2011, Dr. Tamra Maben noted the claimant's behavior was within normal limits. His attitude, mood, affect, thought process, and thought content were all within normal limits (Ex B8F/3). Therefore, the opinions from the LLMSW in Exhibit B6F have been given very little weight.

(A.R. 26). Plaintiff claims the ALJ failed to give the proper weight to this opinion, relying on SSR 06-03p. (ECF No. 10, PageID.404-05).

The opinion of a therapist, however, is not entitled to any particular weight. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir.2014); *Hill v. Comm'r of Soc. Sec.*, No. 1:12–cv–235, 2013 WL 2896889, at * 2–3 (W.D. Mich. June 13, 2013). Therapists are not acceptable medical sources. *See* 20 C.F.R. § 404.1513(a), (d)(1). Only "acceptable medical sources" can: (1) provide evidence establishing the existence of a medically determinable impairment; (2) provide a medical opinion; and (3) be considered a treating source whose medical opinion could be entitled to controlling weight under the treating physician rule. *See* Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, SSR 06–3p (reprinted at 2006 WL 2329939, at * 2 (SSA Aug. 9, 2006)). The opinions of therapists fall within the category of information provided by "other sources." *See* 20 C.F.R. § 404.1513(d)(1).

The social security regulations require that information from other sources be "considered." 2006 WL 2329939, at * 1, 4 (citing 20 C.F.R. §§ 404.1513, 416.913); *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir.2011); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir.2007); *See Hill,* 2013 WL 2896889, at * 2–3. This is not a demanding standard, and it was easily met here.

Therapists and other sources are permitted to offer opinions regarding "the severity of [a

claimant's] impairment(s) and how [such] affects [his] ability to work." *See, e.g.*, 20 C.F.R. §§ 404.1513(d); 416.913(d). When considering such an opinion offered by an other source, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. See Titles II and XVI: Considering Opinions and Other Evidence from Sources who are not "Acceptable Medical Sources" in Disability Claims, Social Security Ruling 06–03P, 2006 WL 2329939 at *2–3 (Soc. Sec .Admin., Aug. 9, 2006) (citing 20 C.F.R. §§ 404.1527; 416.927). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, Social Security Ruling 06–03P, 2006 WL 2329939 at *5 ("not every factor for weighing opinion evidence will apply in every case"); *see also Oldham*, 509 F.3d at 1258; *Undheimt*, 214 F. App'x at 450.

The ALJ properly considered the aforementioned factors. The ALJ expressly mentioned that the therapist had been treating Plaintiff since August 2012, and met on a biweekly basis. (Tr. 322). The ALJ further mentioned the specialization of the therapist as a LLMSW and, in giving the opinion very little weight, found it inconsistent with other opinion evidence. (Tr. 322). To the extent that additional factors were relevant in this particular instance, it is clear from the ALJ's discussion of the medical evidence that such factors were taken into consideration. Accordingly, this argument is rejected.

Plaintiff relatedly contends that the ALJ erred by failing to follow the testimony of the VE that there were no jobs Plaintiff could perform if certain additional limitations were included in his RFC. Although Plaintiff does not specify what limitations he believes the ALJ failed to include, his

citation to the record and reference to Plaintiff's mental impairment indicates that Plaintiff was referring to the limitations that Stacey Fox opined Plaintiff would have–namely an inability to meet competitive standards or have any ability to function in certain mental abilities. (Tr. 324; ECF No.10, PageID.405–06).

In his hypothetical questions to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993). As discussed above, the ALJ gave Stacey Fox's opinion very little weight because it was inconsistent with other substantial evidence, including Plaintiff's activities of daily living and other notes that were given partial weight. And, as the Court has already concluded, the ALJ gave sufficient consideration of Ms. Fox's opinion. Thus, the ALJ did not err by failing to include mental health limitations that he found were not supported by the record.

### 3. Credibility

At the administrative hearing, Plaintiff testified that he was unable to work because he was unable to remember assigned tasks and that he was let go from previous employment because his performance was not acceptable. (Tr. 43). Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x. 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. §

404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston*, 245 F.3d at 536. ("It is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th

16

Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In support of his decision to discount Plaintiff's credibility regarding his inability to work, the ALJ noted that the record did not support the Plaintiff's assertions. For example, Plaintiff lost a job at a meat packing plant not because of performance issues, but rather because of a parole violation. (Tr. 43). A psychology exam revealed that Plaintiff was able to remember six numbers forward and three numbers backward, name five large cities, and two celebrities. (Tr. 297). He could recall two of three items after three minutes. (Tr. 297) The ALJ found Plaintiff's other explanation that he was unable to work "because of [his] past criminal history" to be credible and to be the main cause of his inability to obtain employment. (Tr. 26, 313). In sum, the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence. The Court does not doubt that Plaintiff has deficits in his memory and concentration, but finds such deficits adequately accounted for in his RFC. Accordingly, this argument is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue forthwith.

Dated: January 5, 2016 /s/ Paul L. Maloney
Paul L. Maloney
United States District Judge